92 N.J. Super. 480 (1966)
224 A.2d 35
MONMOUTH CAPITAL CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
HOLMDEL VILLAGE SHOPS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 4, 1966.
*481 Mr. Francis V. Bonello for plaintiff (Messrs. Landy, Bonello & Bonello, attorneys).
Mr. Edward C. Stokes for defendant.
LANE, J.S.C.
This is a real estate mortgage foreclosure action instituted by Monmouth Capital Corporation, a corporation of the State of New Jersey, licensed under the Small Business Act of 1958 to provide equity capital and high-risk, long-term loans to small businesses under the provisions of the act.
On August 19, 1963 George E. Wicks and Leah, his wife, filed a business name certificate with the County Clerk of Monmouth County under the name of Holmdel Village Shops. On September 12, 1963 a building permit was issued to George Wicks by the building inspector of the Township of Holmdel for the erection of four stores in the village business area. By deed dated October 22, 1963 George and Leah Wicks received a title to the premises involved.
*482 George Wicks had been in the contracting business for 30 years in the area from New York City to Toms River, New Jersey. He had attended courses in college and was knowledgeable in business and contracting matters. The project to be placed upon the land was to eventually cost approximately $350,000. At the time of the granting of the loan, the subject matter of this suit, he was working on the development of the first part of the project, which part was a shopping center with a restaurant and stores. When he first had contact with any representative of plaintiff, the building was closed in, storm drains had been installed, rough grading was completed and he was approximately 50% finished with the immediate project. He had invested approximately $85,000 in the project, but he needed additional financing. There was a first mortgage on the land in the amount of $20,000, and approximately $10,000 was owed for materials. Wicks was unable to obtain financing from the Monmouth County National Bank or from South Shore Mortgage Company, primarily because he did not have any leases with triple-A tenants.
In the spring of 1964 Wicks was put in touch with plaintiff. The amount of the loan sought by him was $75,000, to be secured by a note and a first mortgage. He was advised that the plaintiff only made loans to corporations, that it would be willing to make a loan in connection with the project at 11% interest, together with the 2% commitment fee and a 1% fee for attorney's fees. Subsequently, plaintiff agreed to increase the amount of loan to $76,000 so that the 2% commitment fee would be covered by the loan. The loan was to be paid in equal monthly payments on the first of each month commencing October 1, 1964 and concluding September 1, 1974. Security for the loan was a guarantee of Mr. and Mrs. Wicks and a first mortgage on the land, the existing mortgage to be paid out of the proceeds of the loan.
Mr. Wicks sought legal advice from his attorneys, a firm specializing in corporate and real estate matters with their offices in Newark, New Jersey. Defendant was incorporated *483 as a result of plaintiff's requirements. The certificate of incorporation is dated May 26, 1964, which was after Mr. Wicks had been advised that the loan would be granted by plaintiff. At no time was any written application for the loan made by defendant or Mr. Wicks. At no time was any financial statement of defendant submitted to plaintiff. Two members of plaintiff's board of directors were also directors of the Monmouth County National Bank with which Mr. Wicks had done business for a number of years. Through that source, they knew of Mr. Wicks' credit standing. The premises were conveyed by Mr. and Mrs. Wicks to defendant by deed dated June 8, 1964, but not recorded until July 15, 1964. The closing of the mortgage transaction was held July 10, 1964, and a mortgage dated that date was recorded July 15, 1964, at the same time as the deed from the Wickses to defendant. At the closing a S.B.I.C. loan agreement addressed to plaintiff was signed on behalf of defendant by George Wicks as president and Leah Wicks as secretary. There was delivered at the time of the closing an opinion letter from defendant's Newark attorneys stating, in part, that the S.B.I.C. loan agreement "has been duly authorized, executed, and delivered by the Company and constitutes and will constitute the legal valid and binding agreements and obligations of the Company in accordance with their respective terms."
After the formation of the corporation the project continued. Much of the work was subcontracted. The work that was not subcontracted was done by laborers paid by Mr. Wicks. However, the corporation reimbursed him for all such payments. The corporation had a bank account, adopted corporate resolutions in connection with other borrowings, applied for refinancing, paid real estate taxes, entered into leases with tenants, and has acted as a valid legal entity.
Plaintiff advanced $62,500 through November 9, 1964. No payments were made by defendant. On April 1, 1965, as the result of the agreement with defendant's president, plaintiff made a bookkeeping entry increasing the principal by $4721.32, the accrued interest to that date. On October 19, *484 1965 plaintiff issued to defendant a check in the amount of $4395.41 representing the amount of interest accrued from April 1, 1965 to October 1, 1965, which check was endorsed back to plaintiff by defendant. Since the institution of this suit, defendant has arranged to borrow $61,000, which has been paid to plaintiff on account of the mortgage in accordance with an order dated June 15, 1966. Under the terms of such order plaintiff has assigned to the lender "an interest in plaintiff's mortgage to the extent of $61,000. which said assigned interest shall be entitled to first priority of payment out of any funds paid in total or partial satisfaction of said mortgage."
The amount of plaintiff's present interest in the mortgage is claimed to be: principal, $10,616.73; interest through November 1, 1966, $7,344.80.
The defense to the foreclosure action is based upon usury under R.S. 31:1-1. Plaintiff contends that defendant does not have available such defense by reason of R.S. 31:1-6; that defendant is estopped to raise this defense because of the opinion letter given at the closing, and that federal law has preempted the field of the interest rate which a small business investment company may charge as a licensee under the Small Business Act of 1958.
15 U.S.C.A. 685(c) provides that the maximum rate of interest to be charged under the act shall be determined by the Administration. Section 107.603 of the Small Business Administration regulations provides that the maximum annual cost to the borrower shall not exceed the lesser of (a) such maximum annual cost to borrower as may be prescribed by applicable state or local law, or (b) such maximum annual cost to borrower as may be specified in the licensee's proposal and license application. Here plaintiff's application specified a cost to the borrower not to exceed 15%. Therefore, the validity of the amount sought to be charged here is to be determined by New Jersey law.
Defendant would have the court interpret section 107.603 to mean that the plaintiff cannot charge more than *485 6% per annum by reason of the provisions of R.S. 31:1-1, contending that R.S. 31:1-6 relates only to the raising of a defense and not to the amount of interest that can be charged. The regulation of the Small Business Administration must read to refer not just to one provision of Title 31, but to all the provisions thereof.
Plaintiff has an inflexible policy of making loans only to corporations. The reasons for such policy are: (a) in some instances it wishes to take equity positions which it cannot do when dealing with an individual; (b) it is governed by regulations of the SBA and SEC that loans made by it must be for certain purposes and cannot be for other prohibited uses, control of which can best be had by dealing only with corporations, and (c) in order to obtain money to lend, it pays between 5% and 6% and, therefore, if it were limited to making loans at no more than 6%, it could not do business.
It therefore appears that there were valid reasons other than to evade the usury statute that prompted plaintiff to adopt its policy of only dealing with corporations. However, in this instance, the only reason applicable was to be able to charge an amount in excess of 6% per annum. Mr. Wicks had capable legal advice before forming defendant corporation and was a knowledgeable business man. However, had it not been for the regulation of plaintiff, defendant corporation would probably not have been formed. Under these facts should defendant debtor be allowed to avail itself of the defense of usury?
In Gelber v. Kugel's Tavern, Inc., 10 N.J. 191 (1952), the trial court granted a motion of an individual defendant upon his counterclaim for the recovery of usurious bonuses. There defendant corporation was organized by plaintiff's attorney, who prepared the closing documents for the loan. The Supreme Court reversed the judgment, holding that there was a question to be determined by the trier of fact. Justice Brennan stated:
"It is generally recognized, however, that an individual may recover usurious payments on loans made in fact to the individual though in *486 form disguised as loans to a corporation and evidenced by obligations executed by it to hide the fact that the lender has exacted an illegal rate of interest from the real borrower. (Cit. Omit.) If, however, the loans are actually made to the corporation direct, usury is not a defense even to the endorsers of the corporate obligations issued for the loans. * * *" (at p. 196; citations omitted)
In Corradini v. V. & M. Holding Corp., 34 N.J. Super. 427 (Ch. Div. 1955), the individual had formed a corporation and title to the property was taken in the name of the corporation at the direction of plaintiff. The loan was advanced to the corporation. The court held that if the loan was actually made to the corporation direct, and not to the individual defendant though in form disguised as loans to a corporation, the defense of usury was not available.
The following year the Supreme Court decided In re Greenberg, 21 N.J. 213 (1956), which was a disciplinary proceeding. The basis of the holding of the court was that respondent had not discharged his high professional responsibility in the light of the nature of the transaction in which he was involved and in the absence of representation by one of the parties thereto. Respondent had participated in the forming of a corporation to allow the exaction of more than the legal rate of interest. The court found that the loan was in reality a loan to individuals and that the corporation device was invoked at the lender's insistence to circumvent policies against usurious actions. Justice Jacobs stated:
"Although the common law did not prohibit usurious exactions our statutes have done so since 1738. * * * The present enactment (R.S. 31:1-1) prohibits generally the charging of interest exceeding six per cent and it is clear that it is unlawful to take a bonus beyond legal interest from an individual borrower. * * * In 1902 the Legislature passed an act which declared that thereafter no corporation would be permitted to plead or set up `the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed' by it. * * * This act (now embodied in R.S. 31:1-6) is comparable to enactments in other states; they have given rise to much litigation dealing with circumventions of the policy against usury through use of the corporate device. * * *
In some jurisdictions, including our neighboring State of New York, the courts have suggested that since the statutes prohibiting *487 corporations from asserting usury as a defense were restorative of the common law they should be liberally applied. * * * However, our own courts have taken a contrary position and have tended to restrict the application of the statutory provision in order that sympathetic sweep might be given to the State's policy against usury. * * * In Gelber v. Kugel's Tavern, Inc., supra, this court recently served notice that use of the corporate shell to cloak a loan which was actually being made to an individual borrower would in nowise be permitted to defeat the usury laws of our State." (at pp. 219-220, citations omitted)
In Lesser v. Strubbe, 56 N.J. Super. 274 (Ch. Div. 1959), modified on other grounds, 67 N.J. Super. 537 (App. Div. 1961), and per curiam 39 N.J. 90 (1963), the Chancery Division pointed out that Corradini v. V. & M. Holding Corp., supra, was to be deemed overruled to the extent that it was in conflict with In re Greenberg, supra.
The facts of this case lead to the conclusion that defendant corporation was neither a shell nor a cloak. There is no evidence of overreaching by plaintiff. Mr. Wicks was knowledgeable and was represented throughout by competent counsel. Plaintiff has demonstrated valid business reasons for its policy of dealing only with corporations. It can also be noted that in many shopping center projects the builder is a corporation. Under the circumstances, defendant has failed to carry the burden of proof that the loan was usurious.
A contrary holding would mean that in every situation where a corporation is formed in what is known as a "startup" venture, a lender loaning money at more than 6% interest would be subjecting itself to a later claim of usury.
Defendant objects to the computation of interest on the two advances made by plaintiff for the purpose of paying past due interest, claiming that this would be interest on interest which is not permitted. It is undisputed that had defendant borrowed these amounts from a separate source, it would have had to have paid interest. No reason appears why plaintiff is not entitled to interest on such advances.
A judgment may be submitted in accordance with the views expressed herein.