REPUBLICBANK DALLAS,
N.A., Petitioner,

v.

John L. SHOOK, Respondent.

No. C–1127.

Supreme Court of Texas.

May 4, 1983.

Turner, Rodgers, Sailers, Jordan & Calloway, Bruce W. Bowman, Jr., Dallas, for petitioner.

Kolodey, Thomas, Dooley, Maris & Lilly, Tom Thomas, Dallas, for respondent.

POPE, Justice.

This is a usury case. Plaintiff John L. Shook sued RepublicBank Dallas (the Bank) for double the amount of interest paid on a note executed by a corporation by the name of J.L.S., Inc. Shook alleged that the corporation was a shell and that the interest was actually paid by him as an individual. The Bank counterclaimed for the amount of the principal and interest. The trial court

rendered judgment notwithstanding the verdict in favor of the Bank. The court of appeals reversed that judgment and rendered judgment for Shook, the borrower, for usury, but remanded the matter of attorney fees to the trial court. 627 S.W.2d 741 (Tex.App.—Tyler 1981). We reverse the court of appeals judgment. We affirm the judgment of the trial court that Shook take nothing and that the Bank recover the principal and interest on the note together with attorney fees.

John L. Shook began banking with RepublicBank Dallas in 1970. By 1974 Shook had borrowed more than $698,000 for investment purposes. The loans were personal to Shook, had an interest rate of prime rate plus one percent not to exceed ten percent, and were secured by municipal bonds and 35,411 shares of stock in Republic Financial Services, Inc., (Financial Services) a property insurance firm unrelated to RepublicBank Dallas. When the Bank accepted the stock as collateral, it was valued at more than a million dollars, however, in 1973 the value of the stock had decreased to less than $300,000, an amount that did not cover the loans. In 1974 the prime rate had increased to more than ten percent. The loans thus became what the Bank termed "problem loans."

The Bank approached Shook before a renewal date to seek additional collateral. Shook pledged some of his life insurance but refused to allow the loan to be assigned to Shook, Inc., a family corporation that handled family owned property. Shook's wife also refused to pledge some of her separate property. Shook did agree to form a corporation, J.L.S., Inc., so that the Bank could make a new loan to the corporation, which would in turn lend Shook the money to pay off his personal notes. Shook personally guaranteed the corporate notes. The Bank therefore avoided the ten percent ceiling on interest rates for noncorporate loans and was able to charge more for the added risk. After J.L.S., Inc. was formed, the new rate of approximately fifteen percent added about $35,000 per year in interest charges. The Bank received up to $100,000 in additional interest payments as a result of the higher interest rate. Both the Bank and Shook agree that J.L.S., Inc. was formed solely for the purpose of making the higher corporate interest rate possible.

In order to make interest payments, Shook used the dividends from the Financial Services stock, sold his car, and cashed in life insurance policies. The municipal bonds were sold and applied on the debt. Shook was on the Board of Directors at Financial Services and insisted that the stock would increase in value. As the notes came due, small portions of the stock were sold to make interest payments and decrease principal.

A bank vice president testified that, had the Bank foreclosed on the notes in 1974, Shook would have lost $200,000 and the Bank would have lost about the same amount. However, the Bank continued to renew the notes to J.L.S., Inc. with unpaid interest added to an additional note. By July of 1976 the stock had risen in value to a point where it covered the amount remaining to be paid on the notes. By 1979, after a stock split, Financial Services stock rose substantially.

On February 13, 1979, Shook sued the bank for twice the amount of interest he had paid, alleging that J.L.S., Inc. was used as a device to evade the Texas usury laws. The Bank counter-claimed seeking recovery of more than $300,000 in principal and interest plus ten percent of that amount for attorney fees.

The jury found that Shook and the Bank agreed to transfer Shook's personal loan to J.L.S., Inc. so the Bank could charge a rate of interest higher than allowed to be charged an individual; J.L.S., Inc. was used as a device or subterfuge to allow Bank to charge the higher rate of interest; Shook, not J.L.S., Inc. was the true borrower; and the Bank knew that Shook was the true borrower. Despite this, the trial court rendered judgment for the Bank. The court of appeals has reversed the trial court, rendering judgment that Shook should recover for usurious loans. We reverse the judgment

of the court of appeals and affirm that of the trial court.

## I. THE CORPORATE EXCEPTION AND THE TWO MAJOR LINES OF CASES

The corporate exception to the usury laws was born in England in 1716 when a statute was passed, denying the defense of usury to a corporate body. *See* Comment, *Usury Laws and the Corporate Exception,* 23 Md.L.Rev. 51, 54 (1963) (citing to 10 *Bacon's Abridgement* 264, 266 (1952)). States that have adopted similar corporate exception statutes have generally followed one of two rules: the "New York Rule" or the "New Jersey Rule."

The New York Rule is founded primarily on the case of *Jenkins v. Moyse,* 254 N.Y. 319, 172 N.E. 521 (1930). In that case the defendant lender refused to make the loan to an individual but suggested that the plaintiff incorporate. The plaintiff followed the suggestion in order to get the loan but later brought an action claiming that the loan was usurious. On appeal the New York Court of Appeals wrote this often quoted language, "The law has not been evaded but has been followed meticulously in order to accomplish a result which all parties desired and which the law does not forbid." *Jenkins,* 172 N.E. at 522.

New York makes it clear in its recent cases that its courts will make a determination whether the loan was for a purely personal and necessitous purpose or for a personal "business or commercial enterprise." *Schneider v. Phelps,* 41 N.Y.2d 238, 391 N.Y.S.2d 568, 359 N.E.2d 1361, 1364 (1977). In New York, as *Schneider* points out, the claim of usury is allowed only when a corporation has been formed to hide a personal and necessitous loan. Most states follow the New York Rule. *See Matter of LeBlanc,* 622 F.2d 872 (5th Cir.1980); *Snyder v. Woxo, Inc.,* 185 Neb. 545, 177 N.W.2d 281 (1970); Loiseaux, *Some Usury Problems in Commercial Lending,* 49 Tex.L.Rev. 419, 439–41 (1971).

A minority of states have adopted the New Jersey Rule, also known as the "question of fact rule," by which the corporate form is disregarded if the substance of the loan transaction involves a loan to an individual instead of a corporation. *In re Greenberg,* 21 N.J. 213, 121 A.2d 520 (1956). This rule involves a fact determination of whether or not the corporation was used as a device to conceal a usurious transaction to an individual. Note, *Incorporation for the Purpose of Borrowing at an Otherwise Usurious Rate of Interest: Skeen v. Glen Justice Mortgage Co.,* 29 Sw.L.J. 959, 960–61 (1975). The "question of fact" jurisdictions proceed on a case-by-case basis considering such factors as the voluntariness of incorporation, the corporation's financial basis, the purpose of the loan, and the experience of the borrower. *Id.* at 962. Those jurisdictions do not hesitate to examine the reasons for a loan in attempting to determine whether the corporation was the "true borrower." *See Monmouth Capital Corp. v. Holmdel Village Shops, Inc.,* 92 N.J.Super. 480, 224 A.2d 35 (Ch.1966).

## II. TEXAS LAW DEVELOPMENT

In 1967, the legislature provided Texas with its corporate exception here in question:

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited; ...

Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon 1980). The legislative intent in this corporate exception statute was found in

section 4 which was not codified. That section indicated an "urgent need to establish the authority of certain corporations to borrow money." *Id.* § 4.

Since the time the corporate exception statute was passed, Texas cases have held that an individual guarantor may not bring a claim of usury when he guarantees a corporate note. *Universal Metals and Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (Tex.1976); *Lawler v. Lomas & Nettleton Financial Corp.,* 583 S.W.2d 810 (Tex.Civ. App.—Dallas 1979, no writ); *V.I.P. Commercial Contractors v. Alkas,* 553 S.W.2d 656 (Tex.Civ.App.—San Antonio 1977, no writ). Additionally, Texas cases hold that a lender's requirement that the individual incorporate is not a violation of the usury laws but an intention to comply with them and that the corporate entity will only be disregarded when there is fraud or illegality. *Skeen v. Glen Justice Mortgage Co.,* 526 S.W.2d 252 (Tex.Civ.App.—Dallas 1975, no writ). *Accord Bradley v. Houston State Bank,* 588 S.W.2d 618 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Dicker v. Lomas & Nettleton Financial Corp.,* 576 S.W.2d 672 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Houston Furniture Distributors, Inc. v. Bank of Woodlake,* 562 S.W.2d 880 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Micrea, Inc. v. Eureka Life Insurance Co. of America,* 534 S.W.2d 348 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), and *American Century Mortgage Investors v. Regional Center,* 529 S.W.2d 578 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). *See also First National Bank v. Gamble,* 134 Tex. 112, 132 S.W.2d 100 (1939). It is our view that use of the corporate form is not the sort of fraud or illegality to which the *Skeen* court was referring.

Our survey of Texas cases indicates a definite trend in harmony with the majority of states and the "New York rule," which in summary is:

If the loan was made to a corporation, the corporation, by statute, is prohibited from asserting the defense of usury [cites omitted]. Likewise, an individual guarantor of a corporate obligation is also precluded from asserting such a defense [cites omitted]. But where the loan was in fact, although not in form, made to an individual guarantor to discharge his personal obligation, and *not* in furtherance of a corporate or personal enterprise, the individual guarantor may interpose the defense of usury [cites omitted]. On the other hand, where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available.

\*　　\*　　\*　　\*　　\*　　\*

It should be stated, however, that there is no difficulty in sanctioning the use of a shell corporation to avoid the usury laws provided that the true borrower has a business purpose and the corporation itself is a financing device in furtherance of the profit-oriented enterprise.

*Schneider v. Phelps,* 41 N.Y.2d 238, 391 N.Y.S.2d 568, 359 N.E.2d 1361, 1364–65 (1977) (emphasis added). *See also* Benfield, *Money, Mortgages, and Migraine—The Usury Headache,* 19 Case W.Res. 819, 851 (1968). In the case now before us, the loan to Shook was in furtherance of his personal business enterprise.

These decisions comply with the stated purposes of the usury laws and the corporate exception—to provide relief to lenders. *See* Perich, Fields and Hunt, *A Topic of Interest: An Analysis of the Status of the Usury Law in Texas,* 19 S.Tex.L.J. 525, 532 (1978); Comment, *Usury Laws and the Corporate Exception, supra* at 59; Comment, *Using a "Dummy" Corporate Borrower Creates Usury and Tax Difficulties,* 28 Sw.L.J. 437, 449 (1974); Shanks, *Practical Problems in the Application of Archaic Usury Statutes,* 53 Va.L.Rev. 327, 349–50 (1967); Comment, *Incorporation to Avoid the Usury Laws,* 68 Colum.L.Rev. 1390, 1391 (1968).

A 1981 amendment to section 1.04 of the Texas Credit Code requires a determination by the lender of the purposes of a loan. Tex.Rev.Civ.Stat.Ann. art. 5069–1.04 (Ver-

non Supp.1981).[1] That new section requires the lender to distinguish between "business, commercial, investment, or other similar purpose," and "personal, family, household, or agricultural use." *Id.* § (b)(2). *See also,* Farabee and Dodds, *Recent State and Federal Developments In Interest Rate Regulation,* 44 Tex.B.J. 879, 882 (1981).

Shook complains that this case should be distinguished from other cases because the corporation loan was not a "new" loan. He argues that the "corporate loan" was a mere renewal of a personal loan. The Bank strenuously maintained during oral arguments that this was in fact a "new" loan commitment. The parties had dealt previously concerning loan money for the Financial Services stock, but since the Bank had the option of calling the loan, the further extension of credit was a "new" loan. To hold that a loan to an individual could not be "renewed" at corporate rates after the formation of a corporation, would cause unjust results. To lock-in a personal loan and not allow the corporate exception to apply to a subsequently formed corporation would, as here, prevent the borrower sufficient leeway to protect himself especially when a renewal might result in a successful pay back plus profits—a result more beneficial to all concerned than foreclosure. The formation of a corporation at least gives the borrower a choice, whereas without the corporate exception alternative, the only decision to be made is entirely with the lender —"renew" or foreclose. Obtaining money at a higher interest rate does not necessarily preclude profits for both lenders and borrowers and it is often preferable over the alternative of not having access to the money at all. We hold that the loan involved in this case was not usurious.

### III. ATTORNEY FEES

■ The Bank counterclaimed for recovery of principal and interest due on the note and also for $29,779.51 in attorney fees—

ten percent of the unpaid balance and interest provided for in the note. Texas courts do not regard such agreements as absolute promises, but as contracts to indemnify. *F.R. Hernandez Construction & Supply Co. v. National Bank of Commerce,* 578 S.W.2d 675 (Tex.1979). Attorney fees are recoverable in tort or contract actions only where provided by statute or agreement but the holder of a note is not entitled to recover the full contractual amount if the obligor of the note shows that the fee should be limited to an amount that is reasonable under the circumstances. *Id.* at 677. Shook presented evidence that the Bank had spent only a few hours on the cause of action for collection of the note.

■ The Bank insists, and we agree, that a part of its suit for collection on the note involved its overcoming Shook's claims. These claims to the note included pleas of usury, duress, and lack of good faith. The court of appeals held that the time and effort devoted to these claims should be disregarded, thereby making the amount of attorney fees as awarded by the trial court unreasonable. It is our opinion, however, that the Bank had to overcome Shook's claims before it could recover.

In *Williamson v. Tucker,* 615 S.W.2d 881, at 892 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) the party claiming he should be awarded the contractual amount of attorney fees had to defend a separate suit to rescind the note in federal court. If no defense had been made in that separate suit, the party would have lost his right to collect on the note in the state suit. The court of appeals therefore held that expenses for defending the federal suit were incurred as a result of efforts to collect the note and were reasonable attorney fees to be awarded the lender.

Likewise, in this case, the Bank was forced to defend against all of Shook's claims before it could recover the money outstanding on the notes. The Bank should

---

**1.** *See also,* Tex.Rev.Civ.Stat.Ann. art. 1302–2.-09A (Vernon Supp.1982). This amendment to the corporate exception essentially makes the new limit for corporate interest rates that which is contained in art. 5069–1.04. Otherwise the corporate exception of art. 1302–2.09 generally remains unchanged.

recover the full contractual amount for attorney fees.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

SPEARS, J., files a dissenting opinion in which KILGARLIN, J., joins.

SPEARS, Justice, dissenting.

I respectfully dissent.

With this opinion, the court has approved what the jury correctly found was a device or subterfuge to evade the laws prohibiting usury. That it was a subterfuge is not and cannot be denied. This court has previously allowed fees of all sorts to be charged, saying they were not "interest." *See Stedman v. Georgetown Savings & Loan Ass'n*, 595 S.W.2d 486 (Tex.1979) (Spears dissenting). In no other area of the law but usury do the courts approve a subterfuge to evade the law. But here they do, and the majority goes to great pains (and indeed they must) to justify the fiction.

KILGARLIN, J., joins in this dissenting opinion.