ALLIED SUPPLIER & ERECTION, INC., et al., Appellants,

v.

A. BALDWIN & COMPANY, INC., Appellee.

No. 09–83–171 CV.

Court of Appeals of Texas, Beaumont.

Feb. 7, 1985.

Jesse L. English, Harry S. Long & Associate, Beaumont, for appellants.

Thomas E. Konuiszy, Orgain, Bell & Tucker, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

This appeal is from a judgment rendered after a bench trial. Appellee, A. Baldwin & Company, Inc. (Baldwin), plaintiff below, filed suit on two promissory installment notes based on valuable consideration and dated July 5, 1979, and October 20, 1980. The defendants were Allied Supplier and Erection, Inc. (Allied), William C. Key and Chris Maida. Recovery was sought for a 10% attorney's fee as provided for in the promissory notes. Recovery was additionally sought against Key and Maida based on documents entitled "Absolute Guaranty of Payment of Promissory Note".

Appellee's trial pleadings alleged that on July 5, 1979, Allied was indebted to Baldwin on an open account as a result of the sale and delivery of goods, materials and supplies which were delivered but not paid for. On July 5, 1979, Allied executed and delivered to Baldwin a promissory note in the amount of $211,343.23; that promissory note was given in payment of an antecedent debt. Appellee also pleaded the note of October 20, 1980, for $169,817.15, plus interest, as a restructure of the repayment terms of the July 5, 1979, note. The reason alleged for the restructuring was that Allied "became unable to pay the monthly payments of Ten Thousand and No/100 ($10,000.00) plus interest". Baldwin also pleaded the personal guarantee of the payment of the indebtedness by Key and Maida. At the time of the trial the Appellee demanded $149,817.15, plus interest, attorney's fees and costs of court.

The Appellants' major defense and counter-claim was that the promissory notes sued on were usurious. Appellants admitted making some payments on the July 5, 1979, note and also admitted that, being unable to make other payments, they requested a restructuring of the payment terms. Appellants also pleaded that, as part of the consideration of this transaction, Key and Maida each executed and delivered a guaranty of payment of the promissory note in the sum of $169,817.15.

In their appeal, Appellants advance three points of error; one, the trial court erred in finding that the July 5, 1979, and October 20, 1980, notes were not usurious on their face; two, the trial court erred in finding that the October 20, 1980, and July 5, 1979, notes do not provide for interest exceeding twice the amount permitted by law; and, three, the trial court erred in finding that Key and Maida are liable on their guaranty agreements.

The July, 1979, note provided "with interest on the unpaid balance at the rate of thirteen and one quarter percent (13¼%) per annum, said principal and interest payable in installments as follows...." The October, 1980, note provided "with interest on the unpaid balance at the rate of 2% above the highest prime rate posted in the 'Money Rates Section' of the *Wall Street Journal* on the last publishing day of the month prior to the due date of each installment...."

At the threshold, we think it is important and we stress that both the notes provided:

> "If any monthly installment becomes delinquent or is not timely paid, *each such installment* shall be subject to a *late charge* in the amount of *five percent (5%) of the monthly installment.* (Emphasis added)

In his findings of fact, the trial judge found that the late charge provision in the notes applied only to individual installment payments as they were to come due over the term of the indebtedness and not to the entire unpaid principal amount due after acceleration. Further, he found that after the acceleration of the note, no monthly installments were due or payable but only the total unpaid principal was due, owing and payable. In further findings, the trial jurist determined that the late charge provision in the two notes did not apply to the accelerated principal debt; no late charges were ever paid by the Defendants; no late charges were ever collected by the Plaintiff; and no late charges were ever applied to the Defendants' account with the Plaintiff. We agree. Ample probative evidence sustains the court's findings of fact and conclusions of law.

## THE 1979 NOTE

■ We believe that the notes were not on their face usurious. In *American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578, 583 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.), the court, in a well-reasoned opinion, wrote:

> "Usury is a matter of intention. Unless the loan papers show on their face an

intention to charge interest at a greater rate than permitted by law, the burden is on the party pleading usury to show the existence of some agreement, device, or subterfuge to charge usury and that both parties had that purpose in contemplation. *Griffin v. Stewart,* 348 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1961, no writ); *Shipman v. Wright,* 3 S.W.2d 519, 521 (Tex.Civ.App.—Dallas 1928, writ ref'd) and *see Mays v. Pierce,* 154 Tex. 489, 281 S.W.2d 79, 82 (1955). Even though the borrower intended to pay more interest than permitted by law, the transaction is not usurious unless the lender also supposed and intended it to be so. *Abilene Christian College v. Wright,* 1 S.W.2d 720, 723 (Tex.Civ.App.—El Paso 1927, writ ref'd)...."

*TEX.REV.CIV.STAT.ANN. Art. 1302-2.-09* (Vernon 1980), in relevant part, provides:

> "Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, or on any series ... or on any *extension or renewal thereof,* and in such instances, the claim or *defense of usury* by such corporation, its successors, *guarantors,* assigns or anyone ... *is prohibited....*" (Emphasis added)

The parties agree that 1½% per month would amount to an 18% annual rate. We find that 13¼%, as provided for in the 1979 note, including an additional 5% of the monthly installment late charge even as interest on the late monthly installment, would not, under our record, exceed the 18% maximum rate provided for under *Art. 1302-2.09.*

Calculations on the 1979 note (as contended by Baldwin with certain corrections) are as follows:

Original principal amount.....$211,343.23
Statutory maximum interest1.5% per month or rate.................................18% per year
Penalty for late installment payment—if determined to be interest (court held it is not interest) .....................5% of the installment payment
Contracted interest as set out in the 1979 note.............13¼% per annum or the rate of 1.10 per month, actually 1.104166667
Maximum non-usurious interest under the statute.....$211,343.23 × 1.5% per month = $3,170.15 per month
Contracted interest as provided for in the 1979 note$211,343.23 × 1.10% per month = $2,333.58 per month; actually, $2,324.77 per month
Amount of payment ...........$10,000.00 principal + $2,333.58 interest, (which we believe is incorrect by approximately $8.00 or $9.00)
= $12,333.58
5% late payment, figured at.$12,333.58 × 5% = $616.68
Interest plus late payment...$2,333.58 + $616.68 = $2,950.27 (we believe $2,950.26)
Comparison of statutory maximum interest and interest contracted for;
maximum statutory interest at 1.5% per month ................$3,170.15
Actual interest contracted for in 1979 note.................−2,950.27
219.88

We do not hold that the 5% late penalty is an interest charge; we hold to the contrary, that it is not an interest charge.

## THE 1980 NOTE

■ No fixed rate of interest is provided for in the 1980 note. The 1980 note is written with a variable or floating interest rate at 2% above prime. The 1980 note is not usurious because, to make the note usurious, it must be shown that it is usurious on its face. *American Century Mortgage Investors v. Regional Center, Ltd., supra.*

Examining the note on its four corners and carefully examining it on its face, it cannot be determined that the note is usurious. When one of the Appellants was questioned on the 1980 note and was requested to determine the correct interest rate he answered, in substance, that he

could not ascertain that figure without referring to the *Wall Street Journal.*

■ Exhibit "C", attached to the Appellants' trial pleadings, clearly demonstrates that the prime rate quoted in the *Wall Street Journal* (dated October 31, 1980) was 14.5% which, adding 2%, equals 16.5%. It is glaringly clear that the 1980 note was not factually or on its face usurious when made. The party pleading usury must show the existence of some agreement, device or subterfuge and that both parties contemplated, at the time of the making of the note, that the note was usurious. *See RepublicBank Dallas, N.A. v. Shook,* 653 S.W.2d 278 (Tex.1983); *Franklin Offices, Inc. v. Harding,* 579 S.W.2d 254 (Tex.Civ. App.—Dallas 1979, no writ). *See and compare Shipman v. Wright,* 3 S.W.2d 519 (Tex.Civ.App.—Dallas 1928, writ ref'd). The trial judge held to the contrary.

■ Since the 1980 note was not usurious on its face, Appellants had the burden to show that it was used as a means to circumvent the usury law; this they failed to do. Indeed, there are exhibits and verbal evidence in the record that lucidly indicate and demonstrate that Appellee never charged or collected more than the statutory permissible rate of interest. Appellants failed to show a subterfuge used to circumvent or thwart the usury law.

■ Our law looks to the substance of the transaction to determine whether a note is usurious. *RepublicBank Dallas, N.A. v. Shook, supra; Commercial Securities Co. v. REA,* 130 Tex. 11, 105 S.W.2d 872 (1937); *Independent Lumber Company v. Gulf State Bank,* 299 S.W. 939 (Tex. Civ.App.—Galveston, 1927, writ ref'd). Points of error one and two are overruled.

## "THE ABSOLUTE GUARANTY"

■ The question of the "Guarantors" on the "Absolute Guaranty of Payment of Promissory Note" must be decided against the Appellants. Each individual appellant became a guarantor under a separate, written instrument. In their individual capacities they styled themselves as "Guaran-

tors", jointly, severally and unconditionally, guaranteeing payment to A. Baldwin & Company, Inc., on the notes.

*Art. 1302–2.09* provides that corporations may agree to a rate of interest not to exceed 1½% per month or 18% per year on any note, debt or contract of such corporation under which the original principal amount is $5,000 or more, or on any extension or renewal thereof, "and in such instances, the claim or defense of usury by such corporation, its successors, *guarantors*, assigns *or anyone on its behalf is prohibited....*" (Emphasis added) We conclude *Art. 1302–209* governs with paramountcy the "Absolute Guaranty" issue.

■ Usury is a defense personal to the debtor, one that a guarantor may not interpose. *See Arndt v. National Supply Co.*, 633 S.W.2d 919 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). *See Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976); *Loomis Land and Cattle Company v. Diversified Mortgage Investors*, 533 S.W.2d 420 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Houston Furniture Distributors, Inc. v. Bank of Woodlake, N.A.*, 562 S.W.2d 880 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). *See also Ryan Mortgage Investors v. Lehmann*, 544 S.W.2d 456 (Tex.Civ.App.—Beaumont 1976, writ dism'd). In *Ryan Mortgage Investors, supra,* the court held that the guarantors could not avail themselves of the claim of usury, holding, in substance, that an absolute guarantor is prohibited from prosecuting an action to recover a usury penalty.

These notes resulted from the purchase of pipe used in highway construction. Baldwin is not a banker or money lender. *See Rimco Enterprises, Inc. v. Texas Electric Service Company*, 599 S.W.2d 362 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). These notes did not arise out of the use of money as such. It would appear to us, on balance, that Baldwin was trying to "get its hat back".

*TEX.REV.CIV.STAT.ANN. Art. 5069–1.-06 Sec. (1)* (Vernon Pamph.Supp.1985), entitled "Penalties", provides that there shall be no penalty for any violation which results from an accidental and bona fide error. The bona fide error question was decided for Appellee.

The notes and absolute guarantees in this case were not made for a purely personal and necessitous purpose; nor were they made to hide a purely personal loan. Allied, a corporation, was not used as a device to conceal a usurious transaction. The legislative intent, in enacting *Art. 1302–2.09*, was to accomodate an " 'urgent need to establish the authority of certain corporations to borrow money' ". *RepublicBank Dallas, N.A., supra,* at 281. Since the effective date of *Art. 1302–2.09*, "Texas cases have held that an individual guarantor may not bring a claim of usury when he guarantees a corporate note." *RepublicBank Dallas, N.A., supra,* at 281. We sanguinely hold that these notes and guarantees were made in the furtherance of a corporate enterprise.

The trial court found, inter alia, that any amount by which interest plus late charges, over the life of the note, is in excess of the amount allowed by law, *is de minimus*; that the acceleration clause of each note does not express the true intent of the parties and resulted from bona fide error; that the acceleration clause of each note does not express the true agreement and understanding of the parties, and was inserted as a result of a mutual mistake; and, the court concluded, there is no single contingency which would result in usurious interest contracted for under either the 1979 note or the 1980 note. Point of error three is overruled.

Under the findings of fact and conclusions of law, supported by sufficient evidence, made below, we must affirm the judgment and allow the $1,200.00 attorney's fee for the appeal to this court.

AFFIRMED.