FEDERAL DEPOSIT INSURANCE COR-
   PORATION, in its Corporate Capacity,
   as Assignee of NCNB Texas National
   Bank, Plaintiff,

v.

CONDO GROUP APARTMENTS, Condo
   Group II Apartments, ISC Properties,
   Inc., Peter N. Manos, and Market Cen-
   tre Ltd., Defendants and Third–Party
   Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE COR-
   PORATION, as Receiver for First Re-
   publicBank Dallas, N.A., Intervenor
   and Third–Party Defendant,

and

NCNB Texas National Bank,
Counter–Defendant.

Civ. No. 3–91–CV–2433–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 21, 1992.

Barry S. Zisman, Louise H. Price, Rubenstein & Perry, Deborah W. Dawson, F.D.I.C., Asst. Transactions Section—Legal, Dallas, TX, for plaintiff.

Paul T. Nipper, Seeligson & Steinberg, Dallas, TX, for defendants.

C. Wade Cooper and Retta A. Miller, Jackson & Walker, Dallas, TX, for counter-defendant.

Barry S. Zisman, et al., Dallas, TX, for third-party defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are,

(1) Federal Deposit Insurance Corporation as Receiver's ("FDIC–Receiver") Motion for Summary Judgement, and supporting brief and documents, filed January 13, 1992; FDIC–Receiver's Supplement to the Amended Motion for Summary Judgment, filed January 15, 1992; Defendants' Response, filed February 7, 1992; and FDIC as Receiver's Reply, filed February 28, 1992;

and

(2) NCNB Texas National Bank's First Amended Motion for Summary Judgment on Defendants' Counterclaim, and supporting brief and documents, filed March 2, 1992; Motion for Summary Judgment of the FDIC in its Corporate Capacity ("FDIC–Corporate"), and supporting brief and documents, filed March 2, 1992; Response and Brief of Defendants in Opposition to Plaintiff FDIC Corporate's and Counter–Defendant NCNB's Motions for Summary Judgment, filed April 3, 1992; FDIC–Corporate's Reply, filed April 16, 1992; Objections of FDIC–Corporate and NCNB to Affidavit of Peter Manos, filed April 16, 1992; NCNB's Reply, filed April 16, 1992; Letter from NCNB and FDIC–Corporate's Counsel, dated April 22, 1992; and Letter from Defendants' Counsel, dated May 15, 1992.

### I.  Factual Summary

On February 4, 1991 NCNB Texas National Bank ("NCNB") instituted this action in state court. This action was brought against Condo Group Apartments, Condo II Apartments, ISC Properties, Inc., Peter N. Manos and Market Centre, Ltd. ("Defendants") to recover the amounts due under certain promissory notes ("Notes") and unconditional guaranties ("Guaranties")[1]. Defendants executed these Notes and Guaranties on March 1, 1988 in favor of First RepublicBank Dallas, N.A. ("First Republic") in an amount exceeding ten million dollars. The Notes matured on March 31, 1989, and all unpaid amounts became immediately due and payable.

On September 19, 1991 Defendants filed their Original Counterclaim and First Amended Original Answer ("Answer") against NCNB; Defendants' Counterclaim included specifically two counts of usury. FDIC as receiver of First Republic ("FDIC–Receiver") first became aware of the usury counterclaims on October 25, 1991. On November 9, 1991, believing that Defendants had sued the wrong party for

---

1.  A Loan Agreement was executed in conjunction with each of the Notes. Defendant Peter Manos executed Guaranties with respect to

some of the Notes executed by the Defendant entities.

usury, FDIC–Receiver intervened in this action, and removed it to this Court. Defendants have not challenged in their instant pleadings NCNB or FDIC–Receiver's argument that FDIC–Receiver is the proper party defendant as regards Defendants' usury counterclaim.

On July 29, 1988 the First Republic was declared insolvent, and the FDIC was appointed as receiver of First Republic, pursuant to 12 U.S.C. §§ 191 and 1821(c) (1989). Through a Purchase and Assumption Agreement ("P & A Agreement"), the FDIC–Receiver transferred the Notes and Guaranties to NCNB. The FDIC–Receiver retained unto itself, however, all contingent liabilities related to these instruments or to the conduct of First Republic before July 29, 1988; Defendants' usury counterclaims relate to these instruments and such conduct.

On November 30, 1991, NCNB transferred the Notes and Guaranties to their present owner, the FDIC–Corporate. FDIC–Corporate was substituted as Plaintiff in this litigation on December 24, 1991.

Defendants assert affirmative defenses of usury, wrongful offset of a depository account, estoppel, and improper endorsement/lack of capacity. Defendants additionally assert counterclaims against NCNB for usury, wrongful setoff of a depository account and attorneys' fees.

Plaintiff FDIC–Corporate is seeking summary judgment on its claims as well as on Defendants' affirmative defenses to such claims. FDIC–Corporate is seeking judgment against Defendants for amounts of principal and interest due on the Notes and Guaranties. NCNB is seeking summary judgment on Defendants' counterclaims. FDIC–Receiver is seeking summary judgment on Defendants' usury counterclaims, originally asserted against NCNB.

II. *Standard for Summary Judgement*

"Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot*

*v. Upjohn Co.,* 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. As the Fifth Circuit stated in *Christophersen v. Allied–Signal Corp.,* 902 F.2d 362, 364 (5th Cir. 1990), "[b]efore a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case."

The threshold inquiry, therefore, is "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A movant for summary judgment need not support the motion with evidence negating the opponent's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rather, the burden is on the respondent to the motion to make a showing sufficient to establish each element as to which he will have the burden of proof at trial, provided that he has an adequate opportunity for discovery. *See id.* at 324, 106 S.Ct. at 2553. All evidence, however, must be viewed in the light most favorable to the motion's opponent. *See Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

The party with the burden of proof, Defendants in this case, who opposes a motion for summary judgment must point out specific facts showing that there is a genuine issue for trial.

Factual specificity is required because summary judgment is designed to go beyond the pleadings in order to assess the proof and ascertain whether a claim is baseless and should be dismissed or, alternatively, whether a genuine fact issue exists and trial is necessary. Because the opponent of a summary judgment

motion must designate specific facts, it is not enough that he merely restate his claims—general allegations and self-serving conclusions unsupported by specific facts are not adequate.

*Castillo v. Bowles,* 687 F.Supp. 277, 280 (N.D.Tex.1988), *cert. denied,* 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989) (citations omitted).

▪ Summary judgment is particularly appropriate in cases involving promissory notes. *Federal Deposit Insurance Corp. v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1371 (5th Cir.1988).

### III. *Analysis*

Plaintiff's summary judgment evidence satisfies the three elements necessary to recover on the Notes. *See FSLIC v. Atkinson–Smith,* 729 F.Supp. 1130, 1132 (N.D.Tex.1989). Plaintiff is the present owner of the Notes; the Notes were executed by the Defendants; and the Notes are in default. *See generally* Affidavits of Deborah Bacon and Leslyee Sullivan, and attached exhibits. Plaintiff's right to recovery on the Guaranties is similarly satisfied. *See B.L. Nelson & Associates v. Sunbelt Savings, FSB,* 733 F.Supp. 1106, 1109–10 (N.D.Tex.1990). Defendants do not dispute the validity of the Notes and Guaranties.

Plaintiff, FDIC–Receiver and NCNB have further made a prima facie showing by virtue of their summary judgment evidence that all Defendants defenses and counterclaims are without merit. In their response, Defendants have focused their argument almost exclusively on opposing application of the Federal Holder in Due Course Doctrine to their defenses and counterclaims.[2] To the extent that Defendants do not challenge the remaining grounds upon which their defenses and counterclaims fail as a matter of law, summary judgment against Defendants is warranted. *See Atkinson–Smith,* 729 F.Supp. at 1131 ("failure of the nonmovants to carry their burden at this point mandates entry of judgment against them"). Reassertion of claims, without designation of specific facts in support of the claims, is not sufficient to defeat summary judgment. *See supra* page 696.

Defendants' defenses and counterclaims are considered seriatim.

### *Usury*

Defendants assert two usury defenses and counterclaims. First, they claim a usury defense based upon First Republic's cross-collateralization of the Notes in March 1988 in violation of *Alamo Lumber v. Gold,* 661 S.W.2d 926 (Tex.1983)[3]. Second, they claim that NCNB charged a usurious rate of interest because it used NCNB's prime rate to calculate interest after First Republic failed instead of First Republic rates. Both of Defendants' usury defenses fail.

▪ Usury can not be asserted against FDIC–Corporate as a matter of law. Usury statutes are penal in nature. *Federal Deposit Ins. Corp. v. Tito Castro Const., Inc.,* 548 F.Supp. 1224, 1227 (D.P.R.1982), *aff'd,* 741 F.2d 475 (1st Cir.1984). FDIC–Corporate, as an instrumentality of the United States, is not subject to the imposition of any fine or penalty imposed by a state absent express Congressional authorization. *See Missouri Pac. R.R. Co. v. Ault,* 256 U.S. 554, 563–64, 41 S.Ct. 593, 597, 65 L.Ed. 1087 (1921). On this basis, FDIC–Corporate is not subject to penalties or forfeitures arising from usury statutes. *See Matter of Charter Executive Center, Ltd.,* 34 B.R. 131, 135 (Bankr.M.D.Fla. 1983).

▪ Furthermore, Defendant Manos can not assert usury by virtue of his status as

---

**2.** Plaintiff and NCNB argue that Defendants' affirmative defenses and counterclaims are barred by the Federal Holder in Due Course Doctrine. Defendants argue that the Notes are non-negotiable, and the doctrine does not apply to non-negotiable instruments. The Court need not reach these issues, because Defendants' defenses and counterclaims fail as a matter of law on independent grounds.

**3.** On March 1, 1988 Manos, ISC Properties, Inc. and First Republic entered into a Loan Agreement. Defendants' cross-collateralization usury counterclaim is based on this agreement.

a guarantor. *See RepublicBank Dallas, N.A. v. Shook,* 653 S.W.2d 278, 281 (Tex. 1983); *Houston Sash & Door Co. v. Heaner,* 577 S.W.2d 217, 222 (Tex.1979, reh'g of cause overruled). Thus, the only issues involving usury which remain before the Court are the counterclaims asserted against FDIC–Receiver by the Defendants with the exception of Defendant Manos [4].

The National Bank Act ("Act"), however, defeats Defendants' remaining claims of usury against FDIC–Receiver. The Act preempts application of state usury law in actions against national banks, such as NCNB, except to the extent state usury laws fix the rate of interest chargeable by national banks. 12 U.S.C. § 85 [5]; *Evans v. Nat'l Bank of Savannah,* 251 U.S. 108, 109–11, 40 S.Ct. 58, 58–59, 64 L.Ed. 171 (1919); *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1115 (5th Cir.1978), *aff'd sub nom, Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

The Act establishes the exclusive penalty facing national banks which have charged a usurious rate of interest pursuant to Section 85, and imposes a statute of limitations for pursuing such action:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest.... In case the greater rate of interest has been paid, the person by whom it has been paid ... may recover back ... twice the amount of the interest thus paid.... *Provided, that such action is commenced within two years from the time the usurious transaction occurred.*

12 U.S.C. § 86 (emphasis added); *see also M. Nahas Co. v. First Nat'l Bank,* 739 F.Supp. 1338 (W.D.Ark.1990), *aff'd,* 930 F.2d 608 (8th Cir.1991); *Bothwell v. Farmers & Merchants State Bank & Trust Co.,* 84 S.W.2d 229, 230 (Tex.Com.App.1935).

■ Defendants' first usury claim is premised on the cross-collateralization of loan agreements executed in March 1988 which allegedly violated Texas usury statutes as construed in *Alamo Lumber* [6]. More than three years had transpired between such time and the institution of Defendants' counterclaims in September 1991. Defendants' first usury claim is thus barred by the Act's two-year statute of limitations.

■ Additionally, pursuant to 12 U.S.C. § 1825(b) (1989), receivers of national banks, such as FDIC–Receiver, are not liable for usury that may have been charged by a closed bank. *Professional Asset Management, Inc. v. Penn Square Bank, N.A.,* 566 F.Supp. 134, 136 (W.D.Okla.1983); *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 749 F.Supp. 635, 649 (D.N.J.1990); *Security Sav. Bank v. Green Tree Acceptance, Inc.,* 739 F.Supp. 1342 (D.Minn.1990). Punitive damages such as those mandated by the Texas usury statutes, and 12 U.S.C. § 86 are not warranted in the context of a failed financial institution where a receiver is acting for the benefit of the insolvent institution's depositors and creditors. *Federal Deposit Ins. Corp. v. Claycomb,* 945 F.2d 853, 861 (5th Cir.1991).

---

**4.** As already stated, Defendants originally asserted their usury counterclaim against NCNB. However, FDIC–Receiver intervened in this action on the grounds that it was the proper party to Defendants' usury counterclaim, instead of NCNB. Defendants do not challenge this proposition, and the Court will proceed with its analysis on the basis that FDIC–Receiver alone is the subject of Defendants' usury counterclaim. *See supra* page 696. *See also Pernie Bailing Drilling Co. v. Federal Deposit Ins. Corp.,* 905 F.2d 78, 80 (5th Cir.1990) (FDIC–Receiver retained liability for lender-liability claims against First RepublicBank Houston based on purchase and assumption agreement with NCNB).

**5.** Section 85 provides in part:

> Any Association may ... charge on any loan ... interest at the rate allowed by the laws of the State ... where the bank is located ... and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws, the rates so limited shall be allowed.

**6.** In any event, Defendants' reliance on the *Alamo Lumber* line of cases and their construction of Texas usury statutes is misplaced in that the Act precludes application of state usury laws to national banks, such as NCNB.

■ In their second usury claim, Defendants argue that NCNB charged a usurious rate of interest in using NCNB's prime rate to calculate interest rather than First Republic's prime rate or cost of funds rate of interest. Defendants acknowledge that since July of 1988, First Republic effectively had no prime rate or cost of funds rate of interest, but argue that as a result, the rate of interest should be zero, or alternatively, it should be set by this Court.

Defendants cite to no authority for this proposition; nor do they provide any guidance to this Court as to what alternate calculations of the interest rate are more appropriate. Defendants merely voice an objection to FDIC's calculations. This Court can not "be expected to uncover the problems underlying the FDIC's calculations [of interest] on [its] own." *Federal Deposit Ins. Corp. v. La Rambla Shopping Center,* 791 F.2d 215, 221 (1st Cir. 1986).

As regards the prematurity interest rate, the Notes do not specify an interest rate but rather refer to the Loan Agreement between the parties which was executed contemporaneously with the Notes. The Loan Agreement defines the interest chargeable under the Notes in terms of the prime rate or the cost of funds rate of First Republic—which are no longer in existence. Courts have approved use of a prime rate of another bank when the Note became an asset of the FDIC through a purchase and assumption agreement. *See La Rambla,* 791 F.2d at 223.

As regards the postmaturity interest rate, the Fifth Circuit has denied the argument espoused by Defendants that upon insolvency of a bank in possession of a note, the post maturity rate of interest applicable to the note "evaporates" when the prime rate used for prematurity calculations no longer exists. *Federal Deposit Ins. Corp. v. Blanton,* 918 F.2d 524, 532–33 (5th Cir.1990). Instead, the Fifth Circuit has urged compliance with the post maturity interest rate provided by the Note. *Id.*

In this case, NCNB's interest rate falls far short of the maximum rate permissible by law or 18% prescribed by the Note in the case of default.

*Wrongful Offset of Depository Account*

In their Answer, Defendants claimed that NCNB violated its agreement with Defendant Manos, and wrongfully and without notice offset $2,035,000 worth of certificates of deposit in December 1989. In their present pleadings, Defendants seemingly have abandoned this claim in that they fail to controvert or even address Plaintiff and NCNB's summary judgment evidence in favor of dismissal.

■ Defendants' claim fails in that "a bank has the right to offset funds in a depositor's account against indebtedness owed by the depositor to the bank." *Energetics, Inc. v. Allied Bank of Texas,* 784 F.2d 1300, 1302 (5th Cir.1986). In a similar vein, Texas courts have found that no notice is required to offset funds. *Baldwin v. Peoples Nat'l Bank,* 327 S.W.2d 616, 621 (Tex.Civ.App.—Texarkana 1959, no writ); *see also Elizarraras v. Bank of El Paso,* 631 F.2d 366, 371–72 (5th Cir.1980).

*Estoppel*

By way of defense, Defendants assert that NCNB failed to comply with an agreement to consider or respond to contracts from third parties to purchase the properties securing the Notes, and that this failure prevented Defendants' performance under the Notes and Loan Agreement. As a result, Defendants argue that NCNB and FDIC–Corporate should be estopped from asserting their rights under the Notes and Loan Agreement.

There exists no written record of the alleged agreement with NCNB or FDIC–Corporate regarding the sale of property used to secure the Notes. The only evidence presented by Defendants in this regard is the Affidavit of Peter Manos[7]. Manos states that after failure of First Republic and the transfer of the Notes to

---

7. FDIC–Corporate and NCNB move to strike portions of Manos' Affidavit on the ground that they are conclusory and constitute hearsay. In view of the Court's disposition of this claim, it is not necessary to reach the parties' motion to strike.

NCNB, officers of NCNB orally agreed with the Defendants that they would consider contracts for the sale of the properties, and in fact urged the Defendants to seek such contracts. Affidavit of Manos ¶ 5.

█ Any alleged agreement not contained in the Notes or Loan Agreements themselves is barred by the parol evidence rule. *Harville Rose Service v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir.1971), *cert. denied*, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972) (the parol evidence rule excludes evidence of negotiations that are introduced to vary, add to, or contradict the terms of a valid written instrument.) Moreover, Defendants cite to no authority that there exists a duty that a holder of a lien on pledged property, such as NCNB or FDIC–Corporate, release that lien until the lien is satisfied; in fact, no such duty exists under common law. *See Williams v. Greer*, 122 S.W.2d 247, 248 (Tex.Civ.App.— Dallas 1938, no writ).

█ To the extent Defendants argue that FDIC–Corporate and NCNB are estopped from collecting on the Notes due to a breach of a duty of good faith and fair dealing, no such duty exists between borrowers and lenders. *Federal Deposit Ins. Corp. v. Byrne*, 736 F.Supp. 727, 732 n. 8 (N.D.Tex.1990); *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex.1990).

*Improper Endorsement/Lack of Capacity*

By way of defense in their Answer, Defendants asserted that NCNB lacked the capacity to bring this suit on the grounds that the Notes were not properly endorsed when they were transferred from FDIC– Receiver to NCNB; in this regard, Defendants argued that no signature accompanied the endorsements to NCNB, the endorsements to the Federal Reserve Bank Dallas or the cancellation of the endorsements. In their present pleadings, Defendants seemingly have abandoned this claim in that they fail to controvert or even address Plaintiff's summary judgment evidence in support of dismissal.

Upon review of the relevant documents, it appears that the endorsements were proper and in compliance with Texas Business & Commerce Code §§ 3.208 and 3.605, and that FDIC–Corporate is the legal owner and holder of the Notes. *See* Affidavits of Sharon Sweeney, Sullivan and Bacon.

The Court's findings render moot Defendants' counterclaim for attorneys' fees.

IV. *Conclusion*

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED. NCNB's Motion for Summary Judgment is GRANTED, and Defendants' counterclaims against NCNB are DISMISSED. FDIC–Receiver's Motion for Summary Judgment is GRANTED, and Defendants' counterclaims against FDIC–Receiver are DISMISSED. Plaintiff is DIRECTED to submit a proposed judgment in compliance with this Order by *noon, May 29, 1992.*

SO ORDERED.