# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00190-CV

**Appellants, John Reed Kleas and Lelah Mae Broussard Kleas d/b/a Allegra Management; Allegra Development, L.P.; and Allegra Management, L.L.C. // Cross-Appellant, BMC West Corporation d/b/a Stripling-Blake Lumber Company**

**v.**

**Appellees, BMC West Corporation d/b/a Stripling-Blake Lumber Company and Edward Mancias// Cross-Appellees, John Reed Kleas and Lelah Mae Broussard Kleas d/b/a Allegra Management; Allegra Development, L.P.; and Allegra Management L.L.C.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN202575, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The parties appeal a judgment rendered after a jury trial in a suit on a sworn account. Appellee/cross-appellant BMC West Corporation d/b/a Stripling-Blake Lumber Company ("Stripling-Blake"), a supplier of building products, sued appellants/cross-appellees John Reed Kleas and Lelah Mae Broussard Kleas d/b/a Allegra Management; Allegra Development, L.P.; and Allegra Management, L.L.C. ("Allegra"),[1] to recover $15,320.32 for goods bought on account. Allegra filed a counterclaim, asserting an offset based on the alleged defective nature of the goods purchased,

---

[1] We refer to Allegra Development L.P., a development company, Allegra Management, L.L.C., and the individual appellants collectively as "Allegra," except when necessary to refer to the companies' principals, appellants John Reed Kleas ("Kleas") and Lelah Mae Broussard Kleas ("Lelah Kleas").

additional DTPA damages, and attorney's fees. Stripling-Blake then asserted a contribution and indemnity claim against its supplier, Alexander Moulding Company, and against Edward Mancias, the project's self-employed painter. Allegra filed a cross-claim against Alexander Moulding and also filed direct claims against two employees of Stripling-Blake, James Agnew and Victor Mendoza.

At trial, the jury found that Allegra failed to comply with its account agreement with Stripling-Blake and owed the amount on account, plus attorney's fees, but that Stripling-Blake failed to comply with an implied warranty of merchantability, crediting $3,500 to Allegra by way of offset against the $15,320.32 awarded to Stripling-Blake. The trial court entered judgment on the verdict.

On appeal, in four points of error, Allegra urges that (i) the trial court abused its discretion in awarding Stripling-Blake $66,087.73 in attorney's fees because there was insufficient evidence, the award was excessive, and the fees should have been segregated, (ii) the trial court abused its discretion in allowing a trial amendment based upon trial by consent as to the jury's award of damages and attorney's fees to Mancias, and (iii) the trial court abused its discretion in failing to award attorney's fees to Allegra on its warranty claim. In its cross appeal, Stripling-Blake urges that the trial court erred in rendering judgment for Allegra on the warranty claim. For the reasons that follow, we affirm the judgment.[2]

## BACKGROUND

The uncontroverted evidence presented at trial showed that on October 25, 2000, Allegra opened a credit account with Stripling-Blake by executing a written account agreement

---

[2] We grant Allegra's motion to file a supplemental brief, and we grant Stripling-Blake's motion for leave to file a reply. We also grant Allegra's motion to substitute counsel.

2

through its principals John Kleas and his mother, Lelah Kleas. The account agreement allowed Allegra to purchase on credit various construction materials from Stripling-Blake for the construction of a 5,000 square foot house located in south Austin. Under the terms of the contract, Stripling-Blake would provide construction materials, and Allegra would pay for such products in a timely manner. Lelah Kleas also signed a personal guaranty of the Allegra account. Under the guaranty agreement, Lelah Kleas agreed that should Allegra fail to pay under the account agreement, she would be responsible for such payments under the guaranty agreement. The evidence at trial showed that she reviewed the account agreement and discussed its terms with her son John Kleas, with whom she jointly managed Allegra's subdivision development business. The agreements, account statement, invoices, lien notices, and lien claim affidavits were admitted into evidence without objection.

At trial, Allegra did not challenge Stripling-Blake's claim that Allegra failed to make payment for certain materials, including baseboard trim, that were provided by Stripling-Blake pursuant to the agreement. Although they admitted that they had failed to pay $15,320.32 that Stripling-Blake claimed was owed, the Allegra principals claimed an offset for repair costs by virtue of Allegra's contention that a certain trim baseboard product, item "B695," was defective.

The account agreement specified the terms of payments and disclaimed warranties as follows:

> BMC WEST EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED, CONCERNING THE FITNESS FOR ANY PARTICULAR PURPOSE OF THE MATERIALS DELIVERED. Purchaser assumes all risk and liability for the results of the use of any merchandise sold by BMC West to Purchaser. Any items not manufactured by BMC West are warranted

3

only as warranted by the manufacturer or distributor of such items; otherwise, all such items are sold on an "AS IS" basis. Wood products have naturally occurring latent defects that are not ascertainable by inspection, including insects and similar natural conditions. In the event of the discovery of any defect in materials within one (1) year of delivery, BMC West's liability, whether in contract, in tort, under any warranty, in negligence, or otherwise, is limited to replacement of such defective materials. BMC WEST ASSUMES NO LIABILITY FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES. Any recommendation given or advice offered by a BMC West representative is strictly for purposes of assisting the Purchaser in making a decision and in no way constitutes a representation or warranty.

The agreement also provided for Stripling-Blake to retain an attorney to collect amounts due under the contract and provided for the payment of reasonable attorney's fees incurred by Stripling-Blake to be paid by the purchaser "whether or not suit is brought, to collect any money due hereunder, including post-judgment costs and attorney fees." In addition, the guaranty agreement provided for the payment of attorney's fees:

Guarantor shall pay upon demand all of BMC West's costs and expenses incurred in connection with the enforcement of this Guaranty, including without limitation reasonable attorney fees, whether or not litigation is commenced, and at trial and on appeal.

After a three-day trial, the jury found that Allegra failed to comply with its account agreement with Stripling-Blake (Question No. 1); Lelah Kleas failed to comply with the guaranty agreement (Question No. 2); Stripling-Blake did not fail to comply with its agreement with Allegra (Question No. 5); Stripling-Blake did not make a negligent misrepresentation (Question No. 7) or engage in false, misleading, or deceptive acts (Question No. 9); Stripling-Blake failed to comply with implied warranties of merchantability or fitness (Question No. 8); and the baseboard manufacturer

4

Alexander Moulding did not fail to comply with implied warranties of merchantability or fitness (Question No. 11). In its verdict, the jury credited $3,500 to Allegra by way of offset against the $15,320.32 awarded to Stripling-Blake and awarded attorney's fees to Stripling-Blake and Mancias, but declined to award any fees to Allegra.

Stripling-Blake moved the trial court to disregard the jury's affirmative answers to Question No. 8 and its award of $3,500 in response to Question No. 12 on the basis of the implied warranty disclaimer in the account agreement, but the trial court denied the motion.

Allegra and Stripling-Blake appealed.

## DISCUSSION

### *Standard of review*

Allegra's complaints on appeal include challenges to the trial court's award of attorney's fees and Mancias's trial amendment. A trial court's award of attorney's fees and complaint of improper trial amendment are reviewed under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Stripling-Blake challenges the evidence supporting the trial court's award of damages to Allegra on Allegra's breach of warranty claim. In assessing the sufficiency of the evidence as to the award of damages to Allegra under its warranty claim, we view the evidence in the light most favorable to the verdict and indulge any reasonable inference in its favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

5

***Did the trial court err in awarding attorney's fees to Stripling-Blake and in declining to award attorney's fees to Allegra?***

*Award of attorney's fees to Stripling-Blake*

In their first point of error, Allegra contends that the trial court erred in awarding $66,087.73 as necessary and reasonable attorney's fees for a suit on a sworn account of $15,320.32 because the evidence was conclusory, the amount was excessive, and Stripling-Blake failed to segregate the attorney's fees it incurred to defend the warranty claim.

A determination of reasonable attorney's fees is a question for the trier of fact. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). The amount of a fee award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446-47 (Tex. App.—El Paso 2004, no pet.). Even though the appropriate standard of review is abuse of discretion, we may nevertheless review a fee award for sufficiency of the evidence. *Stewart Title Guaranty Co.*, 822 S.W.2d at 11.

Attorney's fees are not recoverable unless authorized by statute or contract. *Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex. 2008); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006); *Strayhorn v. Raytheon E-Systems, Inc.*, 101 S.W.3d 558, 571 (Tex. App.—Austin 2003, pet. denied). It is uncontroverted that the parties had an agreement that provided for attorney's fees. In addition, in its pleadings, Stripling-Blake sought attorney's fees under both its agreements and pursuant to chapter 38 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.006 (West 2008). Although Allegra asserted that the fees were excessive and were required to be segregated, they do not dispute

6

that both agreements provided for the payment of attorney's fees nor do they contest the breadth of the language in the agreements.

Under the terms of the agreements, Allegra agreed to pay all collection costs and expenses, including attorney's fees, incurred in connection with the enforcement of the agreements. By the terms of the agreements, Allegra was bound to pay attorney's fees incurred by Stripling-Blake in its successful collection effort. The trial court submitted a jury issue inquiring as to "a reasonable fee for the necessary services of Stripling-Blake's attorneys in this case, stated in dollars and cents." Based on the jury's answers to the questions posed in the court's charge, the trial court awarded $66,087.73 to Stripling-Blake as reasonable and necessary fees for preparation for trial and trial, $15,000 for an appeal to the court of appeals, $5,000 for preparation of a petition for review in the event of an appeal to the supreme court, and $3,500 for preparation of a brief to the supreme court in the event review is granted.

Stripling-Blake provided billing records as exhibits and testimony to support the award of attorney's fees incurred at the trial court level. The evidence pertaining to Stripling-Blake's attorney's fees came from three sources: (1) testimony of Stripling-Blake's attorney Travis Phillips, (2) testimony from attorney George Slade, and (3) extensive billing statements admitted into evidence as Plaintiff's Exhibit 8. Phillips testified that the matter was referred to his office in January 2002 and he and another lawyer in his office worked on the case from its inception. Although Phillips believed the case was essentially a collections case, its difficulty was compounded by Allegra's "broadly plead" claims that the product was defective and its claims against Stripling-Blake's employees. Phillips testified:

7

It was even further compounded by a decision that they made to sue two of our employees individually, Mr. Mendoza and Mr. Agnew. Mr. Agnew has [ ] been dismissed from the case on a take-nothing judgment on summary judgment. Mr. Mendoza remains a defendant in the case. And my client has been required to vigorously defend its employees since if the employee's liable, of course the company would be liable under a theory of agency. . . .

This case has been very hotly contested. It's been a great complex litigation matter, although the dollars involved are somewhat insignificant, quite frankly, compared to the attorney's fees that both sides have incurred.

Phillips acknowledged the requirement of allocation of fees between claims for which the fees are allowed and claims for which they are not and testified that given the claims against the company's employees and the complexity of the case, the work done was "inextricably intertwined," so that the fees could not be allocated. What would have been a simple case had become substantially more difficult due to Allegra's counterclaims. Phillips believed the respective claims of the parties were interrelated and that he needed to defend the counterclaims in order for Stripling-Blake to recover. He then testified to the hours worked and that the fees were reasonable, necessary, fair, and standard in Travis County. He further estimated the amount of fees on appeal. On cross-examination, Allegra's attorney did not question Phillips concerning the nature or extent of the work done or whether segregation was required or appropriate. He queried only whether Phillips's four-day trial length estimation was accurate and whether Allegra's course of action in asserting its counterclaim was "reasonable."

Likewise, Stripling-Blake's expert on attorney fees, George Slade, testified that Stripling-Blake's attorney fees were reasonable, necessary, and incurred as a result of prosecuting and defending inextricably intertwined claims and counterclaims. He stated that he was familiar

8

with fees customarily charged in Travis County, having been a trial lawyer in the county for twenty-one years. He testified that an expected range of fees for a four-day jury trial in Travis County, preparing and taking five or six depositions, and having various motions heard would be between $65,000 and $75,000. Based upon his review of the files and the billing statements, he testified that the fees charged and fees estimated were reasonable, if not actually lower than the customary charge and rate for an attorney of Phillips's experience. In a brief cross-examination, Allegra's attorney inquired only when Stripling-Blake designated its experts and how many documents Slade examined in reviewing the file.

In determining whether the award is excessive, we are entitled to look at the entire record and to view the matter in light of the testimony, the amount in controversy, the nature of the case, and our own common knowledge and experience as lawyers and judges. *McFadden v. Bresler Malls, Inc.*, 548 S.W.2d 789, 790 (Tex. Civ. App.—Austin 1977, no writ). Among the factors most frequently considered by courts in determining whether attorney's fees are reasonable are: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the nature and length of the professional relationship with the client; and (6) the experience, reputation, and ability of the lawyer or lawyers performing the services. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Fees attributable to the defense of a counterclaim are recoverable if the facts necessary for the plaintiff to recover also serve to defeat the counterclaim. *RepublicBank Dallas, N.A. v. Shook*, 653 S.W.2d 278, 282 (Tex. 1983). In his opening statement, Allegra's counsel stated that the baseboard was indeed defective and, because of the cost resulting from its repair, that amount should offset the amount of Stripling-Blake's claim. Because Allegra pleaded its counterclaim as an affirmative defense and urged it as an offset, Stripling-Blake had to overcome the warranty claim in order to prevail on its debt collection. *See RepublicBank*, 653 S.W.2d at 282. Based on the record before us, we conclude the amount of attorney's fees was reasonable and necessary.

Having concluded that the trial court did not abuse its discretion in awarding attorney's fees pursuant to the agreements, we turn to the issue of segregation of attorney's fees. Stripling-Blake first contends that Allegra waived any complaint and did not preserve the issue of segregation for our review because they did not object on that basis when Stripling-Blake presented its evidence of attorney's fees. *See, e.g.*, *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived"); *McCalla v. Ski River Dev., Inc.*, 239 S.W.3d 374, 383 (Tex. App.—Waco 2007, no pet.) (to preserve complaint that the opposing party failed to segregate its attorney's fees, "[g]enerally, such an issue is preserved by objection during testimony offered in support of attorney's fees or an objection to the jury question on attorney's fees"); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 454 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (failure to object waives opposing party's failure to segregate).

10

On cross-examination by Alexander Moulding's attorney, Stripling-Blake's attorney testified that his firm had not segregated fees according to the defense of the two employees or the prosecution or defense of the case because "the work is so inextricably intertwined you can't differentiate" it. Allegra's attorney, also declining to segregate fees, similarly testified that he was seeking all of Allegra's attorney's fees. Both Allegra and Stripling-Blake sought their incurred attorney's fees, their attorneys testified in support of their requests, and neither side attempted to segregate their attorney's fees. Allegra did not object on the grounds of failure to segregate prior to the award of attorney's fees to Stripling-Blake.[3] Because Allegra failed to object to the evidence, including testimony and billing records, on the ground that the fees should be segregated and also did not object to the charge as submitted on the issue of attorney fees, the trial court did not have an opportunity to correct any error and, thus, any error was waived. *See* Tex. R. App. P. 33.1(a)(1) (to preserve complaint for appellate review, the complaint must be made to the trial court by "a timely request"). We overrule Allegra's first point of error.

*Failure to award attorney's fees to Allegra*

In their fourth point of error, Allegra argues that the trial court abused its discretion in not awarding attorney's fees to Allegra for the successful prosecution of its implied warranty claim. But Allegra did not submit a question to the jury conditioned on the issue of its implied

---

[3] Prior to the district court's entry of the final judgment in February 2005, Allegra filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial asserting for the first time that Stripling-Blake was required to segregate their attorney's fees. In *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006), the supreme court clarified the exception for segregation of fees, but the complaining party in that case objected to the failure to segregate fees "during and after trial." *Id*. at 310.

warranty claim. Question 5 asked whether Stripling-Blake failed to comply with its agreement with Allegra:

> Did Stripling-Blake fail to comply with its agreement with Allegra Management? Failure to comply by Stripling-Blake is excused if compliance is waived by Allegra Management.

The jury answered "No." Only Question 13 related to attorney's fees to be recovered by Allegra. It asked:

> If you answered "yes" to Question 5, then answer the following question. Otherwise, do not answer the following question.
>
> What is a reasonable fee for the necessary services of Allegra Management's attorneys in this case, stated in dollars and cents?

Following the court's instructions, having answered "No" to Question 5, the jury left Question 13 unanswered.

Allegra did not request an attorney's fee question conditioned on the issue of implied warranty in Questions 8 and 12 for which the jury found damages and awarded $3,500. Nor did Allegra object to the submission of Questions 5, 8, 12, or 13. If a party does not object to an erroneous conditional submission, the party waives the error. *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987); *Matthews v. Candlewood Builders*, 685 S.W.2d 649, 650 (Tex. 1985).

The jury simply followed its instructions. Because it did not answer "Yes" to Question 5, the breach of contract question, it left Question 13 relating to attorney's fees for breach of contract blank. Question 12 addressed Allegra's various theories of damages and was conditioned

12

to a "Yes" answer to Questions 5, 6, 7, 8, 9, 10, or 11. Recognizing that only Question 5 related to contract damages for which it could recover attorney's fees, at the charge conference, Allegra's counsel objected that Question 12 failed to condition an award on Question 5. He stated:

> Your Honor, I simply object to Question 12 because it leaves out Question 5 as a predicate and I believe we need to have contract damages as well as attorney fees for Question 5. Question 5 is the contract claim.

Question 13 was conditioned only on a "Yes" answer to Question 5. The trial court then asked Allegra's counsel if he had any other objections, to which he responded that he did not.

Having failed (i) to request an attorney's fee question predicated on breach of implied warranty, and (ii) to object to the charge submitted, Allegra has waived any error. We overrule Allegra's fourth point of error.

### *Did the trial court abuse its discretion by allowing Mancias's trial amendment as to damages and attorney's fees against Allegra?*

In its second and third points of error, Allegra urges that the trial court abused its discretion in allowing Mancias's oral trial amendment with regard to damages and attorney's fees as against Allegra and that the evidence is insufficient to support an award of attorney's fees. Allegra asserts that the trial court erred in granting Mancias's oral trial amendment for a breach of contract claim and for attorney's fees against Allegra.

A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party fails to make an appropriate complaint. Tex. R. Civ. P. 67; *Johnson*

13

*v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719 (Tex. App.—Dallas 2004, no pet.); *Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Rule 67 of the Texas Rules of Civil Procedure provides that when issues not raised by the pleadings are tried by implied consent, they must be treated in all respects as if they had been raised in the pleadings. Tex. R. Civ. P. 67; *Johnson*, 148 S.W.3d at 719; *Gutierrez v. Gutierrez*, 86 S.W.3d 721, 729 (Tex. App.—El Paso 2002, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record, not for evidence of the issue, but rather for evidence of trial of the issue. *Johnson*, 148 S.W.3d at 719; *Hoggett v. Brown*, 971 S.W.2d 472, 496 n.4 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

After Allegra filed its affirmative defense asserting an offset against Stripling-Blake and its two employees, Stripling-Blake filed a third-party petition against Mancias. At the time of trial, Mancias had asserted a contribution claim against Stripling-Blake for any damages for which he "is judged liable in connection with the claims made by Allegra." He asserted:

> [I]n the event that Mancias is determined to be liable to Allegra, then Mancias seeks contribution from [Stripling-Blake] with respect to all damages allegedly sustained by Allegra. Mancias therefore asserts a claim against Allegra seeking contribution for any damages for which Mancias is judged liable in connection with this action.

He also sought recovery of reasonable and necessary attorney's fees from Stripling-Blake. Mancias also filed a cross-claim against Allegra asserting that he "would show that it was the actions of Allegra that resulted in such damages" and seeking damages from Allegra for any claims against him by any party to the litigation. Mancias also sought contribution from Allegra with respect to any damages sustained by Mancias and for which he is judged liable "in connection with this action."

14

In his opening statement, Allegra's attorney told the jury that Mancias was the person who painted the defective baseboard. Kleas testified that Mancias determined when the trim would be installed and was responsible for the trim being stored in the garage:

> The trim was ready to be installed in the second floor of the house. Mr. Mancias insisted that none of the trim be placed in the house, as a matter of fact, after he painted and primed - - primed and painted it, that he put it back into the garage because he wanted Ronnie [Stark] to finish the whole interior of the house. . . . So it was not only Mr. Mancias' decision with Ron Stark to go over when this trim would be put in, but it certainly was put in by mid June. It was completed - - it takes about - - well, we had to sand it about four or five times to make it decent looking, but the trim was ultimately not proven to be decent looking. But we completed it sometime in the latter part of July.

Kleas testified that he instructed Mancias to continue installing the trim even though it was defective. Although Kleas testified that he paid Mancias in full, he disputed that Mancias had completed the work upon which they had agreed and complained that Mancias only applied single coats of primer and paint. On cross-examination, Kleas acknowledged that a representative from the paint company conducted an on-site inspection of Mancias's work and advised Kleas that the paint had been applied according to the company's specifications. Kleas testified that his problems with Mancias remained unresolved: "I have a house with one coat of paint on it about three-quarters of it. And I gave up arguing over it."

At the close of Stripling-Blake's case, Mancias's attorney moved for a directed verdict on the claim by Stripling-Blake against Mancias, which the trial court granted. After Stripling-Blake, Allegra, and Alexander Moulding had rested, Mancias's attorney called Mancias to testify.

15

Mancias testified how he came to work for Allegra and Kleas and that they agreed upon the work to be done and its price, which was reflected in a written agreement. Mancias testified that Kleas continued to pay him until Allegra ran out of money. At that point, there were various delays in the project, and Mancias would drive by the site to see if there was work he should do. Mancias testified that on one occasion, after the baseboard had been sanded and he had applied "a good coat finish," he returned to find the work had been sanded off. Mancias also disputed Kleas's testimony that the baseboard trim was protected in the garage by plastic and duct tape sealing. He testified that Kleas's testimony was incorrect: "They were exposed. They were never duct taped. The only tape that Mr. Kleas probably saw was when I was priming and putting a coat of paint was when I put in the garage." When Kleas asked Mancias to repaint some walls, Mancias declined because Allegra had failed to pay him for work done. Mancias agreed to return to work "when you can afford me to come back." Mancias testified that Allegra owed him a balance of $3,740 for work done. Allegra's attorney did not object to Mancias's testimony regarding moneys owned to him by Allegra and, on cross-examination, asked whether he had filed a lien on the property or had sent a demand letter. Mancias testified that he had not.

Mancias's attorney then testified to preparing for trial and defense of the case against his client and that reasonable and necessary attorney's fees were $9,000. On cross-examination, he explained further the amount of work he had done. The only objection to his testimony occurred when he testified that he had approached attorneys in the case that morning to say that "I do not believe there had been sufficient evidence presented by any party that created a fact issue as to whether or not Ed Mancias was the producing cause of damages."

16

At the charge conference, Allegra's attorney did not object to the submission of the following questions:[4]

> Question 14
> Did Allegra Management fail to comply with its agreement with Edward Mancias?
> Answer "Yes" or "No."[5]
>
> Question 15
> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Edward Mancias for his damages, if any, that resulted from such failure to comply?
> Answer in dollars and cents, if any.[6]
>
> Question 16
> What is a reasonable fee for the necessary services of Edward Mancias' attorney in this case, stated in dollars and cents?
> a. For preparation and trial.
> b. For an appeal to the Court of Appeals
> c. For an appeal to the Supreme Court of Texas.[7]

Mancias's attorney then moved for a trial amendment to "clarify" Mancias's claim for the value of goods and services rendered for which he had not been paid and for attorney's fees to recover that amount. The trial court granted the trial amendment over Allegra's objection.

A claim is tried by consent when there is an understanding by the parties that the issue is in the lawsuit, and evidence is introduced at trial and not objected to by the other party. *Frazier*,

---

[4] These were among the written jury questions submitted by Mancias to the trial court for inclusion in the court's charge.

[5] The jury answered "Yes."

[6] The jury answered "$3,740."

[7] The jury answered: a. "$9,000"; b. "$7,500"; c. "$4,000."

102 S.W.3d at 411. Mancias testified at length concerning the dispute between Kleas and himself concerning work done and Allegra's failure to pay for services rendered. Mancias's attorney likewise testified without objection regarding the attorney's fees incurred to recover on Mancias's claim. Based on the record before us, we find ample evidence of trial of these issues. *See Johnson*, 148 S.W.3d at 719; *Hoggett*, 971 S.W.2d at 496 n.4. Because the subject of the trial amendment was raised as an issue at trial, the record demonstrates the issues were tried by consent, and there was sufficient evidence to support the claims, we overrule Allegra's second and third issues.

***Did the trial court err in rendering judgment in favor of Allegra on its warranty claim?***

In its only issue on appeal, Stripling-Blake argues that the trial court erred in rendering judgment for Allegra in the amount of $3,500 because, as a matter of law, Stripling-Blake disclaimed any implied warranty for merchantability and fitness for a particular purpose and the questions relating to that issue were, therefore, immaterial. We construe Stripling-Blake's argument to be that the evidence is legally insufficient to support the jury's finding that Allegra sustained $3,500 in damages because such damages were barred by the disclaimer.

A reviewing court must view the evidence in the light most favorable to the verdict, indulging every reasonable inference that supports it, but the court may not disregard evidence that allows only one inference. *City of Keller*, 168 S.W.3d at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*. at 827. We must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*. A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court

18

is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citation omitted).

In its fourth amended counterclaim, Allegra alleged that Stripling-Blake breached it warranties to Allegra, "including the implied warranties of merchantability and fitness for a particular purpose," that Stripling-Blake breached its warranty to replace and repair defective products, and has "refused to pay the costs of removing the defective product, and then replacing and installing replacement baseboard materials." Citing its disclaimer of warranties in the account agreement, Stripling-Blake urged that all warranties were disclaimed. Allegra responded that the agreement failed to address the warranty of merchantability and only addressed fitness for a particular purpose, that the disclaimer was not sufficiently conspicuous, and that, in any event, Stripling-Blake agreed to replace any defective product and that they failed to do so.

The questions relating to the warranty claim were Questions Nos. 8 and 12:

Question 8
Was the failure, if any, of Stripling-Blake to comply with a warranty a producing cause of damages to Allegra Management?
"Failure to comply with a warranty" means either of the following:
1. furnishing goods that, because of a lack of something necessary for adequacy, were not fit for the ordinary purposes for which such goods are used; or
2. furnishing or selecting goods that were not suitable for a particular purpose if Stripling-Blake had reason to know the purpose and also had reason to know that Allegra Management was relying on Stripling-Blake's skill and judgment to furnish or select suitable goods.[8]

---

[8] The jury answered the question affirmatively.

19

Question No. 12 was conditioned an answer on a "yes" answer to Questions 5, 6, 7, 8, 9, 10, or 11.[9]

It asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Allegra Management for its damages, if any, that resulted from such conduct?

Only question 8 was answered affirmatively. *See* note 9 *supra*. The jury then answered $3,500 in response to Question No. 12.

Although Allegra sought an offset of $15,000, the only testimony related to this claim concerned Allegra's efforts to replace the defective product and that the cost of correcting it with additional sanding cost between $3,000 and $4,000 "give or take." Kleas testified that he discussed the problem with the two employees of Stripling-Blake and tried to resolve the problem multiple times. Stripling-Blake inspected the wood and attributed any problem to the manner of storage and the delay in the product's installation. The cause of the problem with moisture in the wood was disputed, with Kleas blaming Stripling-Blake on the quality of the wood and Stripling-Blake blaming Kleas for failure to properly store the wood before it was installed. The record reflects

___

[9] Question 5 asked whether Stripling-Blake failed to comply with its agreement with Allegra. The jury answered, "No." Question 6 was conditioned on an affirmative answer to Question 5 and asked: "Was Stripling-Blake's failure to comply with the agreement a producing cause of damages to Allegra Managment?" The jury left this question unanswered. Question 7 asked whether Stripling-Blake made a negligent misrepresentation on which Allegra justifiably relied. The jury answered, "No." Question 9 asked whether Stripling-Blake engaged in any false, misleading, or deceptive act or practice on which Allegra relied to its detriment that was a producing cause of damages to Allegra. The jury answered, "No." Questions 10 and 11 asked whether Victor Mendoza, Stripling-Blake's employee, or Alexander Moulding engaged in acts that caused damage to Allegra. The jury answered "No" to both questions.

Allegra continued to install the product but withheld payment to Stripling-Blake until the dispute could be resolved.

An implied warranty is a representation or promise by the seller as to the quality or suitability of the item sold that is legally inferred or presumed and imported into a contract in view of all facts and circumstances attending the transaction, including the nature of the property, the terms of the agreement, and trade usages. *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 131 (Tex. App.—Amarillo 1997, pet. denied). Section 2.314 of the business and commerce code, which provides for an implied warranty of merchantability, specifies that a warranty that goods shall be merchantable is implied in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind. Tex. Bus. & Com. Code Ann. § 2.314 (West 1994). To exclude or modify the implied warranty of merchantability or any part of it in the sale of goods, the language must mention merchantability. *Id.* § 2.316 (West 1994). The account agreement did not mention merchantability, but did provide for replacement of defective goods. Viewed in the light most favorable to the verdict, the evidence showed that Allegra incurred damages in its attempt to repair and/or replace some of the goods. The testimony was disputed as to the amount and extent of damages, and it was for the jury to resolve the credibility of the witnesses.

The jury found that Stripling-Blake failed to comply with "a warranty" and awarded damages in the amount of $3,500, which was within the range of the testimony regarding the amount of damages incurred. *Bowen v. Robinson*, 227 S.W.3d 86, 98 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). On this record, we conclude the trial court did not err in entering judgment for $3,500 on Allegra's breach of warranty claim. We overrule Stripling-Blake's issue on appeal.

21

## CONCLUSION

Having overruled both parties' issues on appeal, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   December 19, 2008

22